## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHANNON MAE KING,

    *Plaintiff*,

*v.*                    CASE NO. 13-cv-13022

COMMISSIONER OF            DISTRICT JUDGE LINDA V. PARKER
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

This Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (docket 8) be **DENIED**, that Defendant's Motion for Summary Judgment (doc. 10) be **GRANTED**, and the decision of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability

---

[1] The format and style of this Report and Recommendation comply with the requirements of Fed. R. Civ. P. 5.2(c)(2)(B). This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

insurance benefits (DIB). The matter is currently before this Court on cross-motions for summary judgment.[2] (Docs. 8, 10.)

Plaintiff filed an application for a period of disability and DIB with a protective filing date of October 19, 2010, alleging that she became unable to work on June 1, 2004. (Transcript, Doc. 6 at 87, 177.) Plaintiff amended her onset date of disability to January 14, 2002. (Doc. 18, 47.) The claim was denied at the initial administrative stages. (Tr. at 87-97.) On January 12, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Craig R. Petersen, who considered the application for benefits *de novo*. (Tr. at 43.) In a decision dated February 1, 2012, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 14, 2002 through December 31, 2004, Plaintiff's date last insured[3]. (Tr. at 29.) Plaintiff requested Appeals Council review of this decision. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 10, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On July 15, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal

---

[2]The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

[3]The claimant must show that she was entitled to benefits on or before the date on which insurance coverage lapsed, the "date last insured." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing 42 U.S.C. § 423).

standards. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "more than a scintilla . . . but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(quoting *Cutlip v. Sec'y Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en banc)(citations omitted)).

"Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

3

*of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party")(citations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### C.    Governing Law

Disability for purposes of DIB is defined as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff's Social Security disability determination is to be made through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. § 404.1520. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)(cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)); *see also Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)("[c]laimant bears the burden of proving his entitlement to benefits."). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff last met the insured status requirements through December 31, 2004, and had not engaged in substantial gainful activity since her alleged onset date of January 14, 2002 through the date last insured. (Tr. at 20.) At step two, the ALJ found that Plaintiff's depression, abdominal and pelvic pain, degenerative disc disease of the lumbar and cervical spine, bilateral carpal tunnel syndrome, De Quervain's tenosynovitis and obesity were "severe" within the meaning of the second sequential step. (Tr. at 20.) At step three, the ALJ found no evidence

5

that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21-23.) The ALJ found that the Plaintiff had the residual functional capacity (RFC) to perform sedentary[4] work limited by the need to lift and/or carry up to 10 pounds only occasionally, requiring the option to alternate between sitting and standing at will, could not perform overhead work, could not perform forceful gripping, grasping, pushing, or pulling with the bilateral upper extremities, could not be exposed to vibration, cold, heat, or wetness, was limited to performing simple, routine and repetitive tasks, required work that involved simple, work-related decisions with few, if any, workplace changes, and she could only occasionally interact with co-workers, supervision or the general public. (Tr. at 23.) At step four, the ALJ found that through the date last insured, Plaintiff could not perform any of her past relevant work. (Tr. at 28.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy and therefore she was not suffering from a disability under the Social Security Act at any time from January 14, 2002, the alleged onset date, through December 31, 2004, the date last insured. (Tr. at 29.)

### E.    Administrative Record

Plaintiff was 37 years old when she applied for disability benefits and 28 years old on her alleged onset date. (Tr. at 49.) Plaintiff has past work as a paramedic and nurse assistant. (Tr. at 59, 61, 196.) Plaintiff is a high school graduate and earned a paramedic certification following high school. (Tr. at 53.) Plaintiff testified that in 2008 and 2009 she attended community college

---

[4]

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

for three semesters and took two classes per semester.  (Tr. at 55-56.)  She testified that she averaged about 4 hours per week on campus and an hour per day learning online. (Tr. at 56-57.) She stopped going because she missed too many days due to her conditions. (Tr. at 57.) At the hearing, Plaintiff testified that she is 5 feet 5 inches tall and weighs 185 pounds. (Tr. at 58.) Plaintiff lives with her husband and two school-aged children. (Tr. at 49.)

Plaintiff initially filed for disability alleging conditions of fibromyalgia, clinical depression, damaged nerves in her neck and bulging discs in the lower back. (Tr. at 88.) Plaintiff testified that at the time of her alleged onset date her pain and depression had worsened. She had pain in the back, neck, pelvis, wrists and hands. (Tr. at 59.) Plaintiff testified that she became aware of her depression in 2001, having postpartum depression with the birth of her first child. (Tr. at 65.) She testified that the daily chronic pelvic abdominal pain started in 2001 or 2002, and she took Motrin and Tylenol for the pain. (Tr. at 66.) She later testified that much of the pelvic pain resolved with a subsequent hysterectomy in 2008. (Tr. at 69.) She testified that she experienced back pain starting in the 1990's and neck pain starting in 2001 or 2002. (Tr. at 66-67.)

Plaintiff testified that she underwent carpal tunnel release surgery on the right, dominate wrist in 2007. (Tr. at 67.) She was diagnosed with migraine headaches at age 18, and in 2002 she was having them once or twice per month on average, lasting one hour if her medications were effective or all day if they were not. (Tr. at 68.) She testified that since 2002 she could lift and carry ten to fifteen pounds, stand for fifteen minutes, walk for twenty minutes and sit for forty-five minutes at a time. (Tr. at 70.) She described having trouble with her hands including grip strength, pain, weakness and numbness yet she was also able to dress herself and her children. (Tr. at 71.) She was able to care for her child by herself several days a week, do laundry, cook and vacuum. (Tr. at 71.) She did not perform the household finances but testified that she could have done so

7

if her husband had let her. (Tr. at 72.) When asked, she responded that she could not work eight hours a day due to being in pain and tired. (Tr. at 75.) Upon questioning by her attorney, she testified that, during the time period at issue, she took two naps per day of about one and one-half to two hours but she did not know why she napped. (Tr. at 76-77.) She described her depression symptoms as crying a lot, not wanting to go anywhere or do anything, and having trouble following through on things and remembering names. (Tr. at 77.) Plaintiff took an anti-depressant at that time but did not see a psychologist, psychologist or mental health worker. (Tr. at 78.)

Plaintiff has a history of pelvic pain. (Tr. at 362.) A sonography of the pelvis on June 4, 2004 revealed findings consistent with a hemorrhagic cyst. (Tr. at 329-30.) In July 2006, she underwent an exploratory laparotomy and lysis of adhesions. (Tr. at 288, 355.) She was ultimately diagnosed with pelvic pain of unknown etiology. (Tr. at 291.) In February 2008 Plaintiff underwent a complete hysterectomy. (Tr. at 297-99, 331-35, 352.) The medical records show that Plaintiff was pregnant during a portion of the relevant time period and gave birth in 2005. (Tr. 320-26, 336, 342-350.)

At the time of application Plaintiff reported that she has taken the following medications: Ativan for anxiety; Cymbalta, Lexapro, Prozac, and Zantac for depression; Duragesic patch, hydrocodone and Norco for pain; Neurontin for fibromyalgia[5]; Nuvigil for fatigue; and Nexium and Prevacid for acid reflux. (Tr. at 198, 231.)

Electrodiagnostic testing of the upper and lower limbs and paraspinal musculature in March 2002 was normal with "no electrodiagnostic evidence of cervical radiculopathy, brachial

---

[5]Plaintiff reported extreme pain from fibromyalgia. (Tr. at 210). The ALJ correctly found that there was no diagnosis nor objective medical evidence of fibromyalgia during the relevant time period. (Tr. at 21.) This is not challenged by Plaintiff.

plexopathy, carpal tunnel syndrome, proximal median neuropathy or ulnar entrapment neuropathy at the wrist or near the elbow." (Tr. at 413.) Jay H. Jones, M.D., reported that he suspected bilateral carpal tunnel syndrome that did not show up on electrodiagnostic testing, De Quervain's tinea synovitis, lumbar spine pain, leg numbness and noted to rule out cervical radicular disease. (Tr. at 413.) He also noted that the "EMG and clinical exam is completely normal today." (Tr. at 413 ¶ 5.)

On March 30, 2005, Christopher J. Oravitz, M.D., reported that Plaintiff "presents today for new onset of post partum depression." (Tr. at 360.) On April 6, 2005 Dr. Oravitz reported that Plaintiff has a "history of post partum depression" and that he had prescribed Lexapro, with which he noted Plaintiff's report of slight improvement. (Tr. at 359.) The record shows that on April 13, 2005 Plaintiff cancelled her appointment, and was reportedly doing much better. (*Id.*)

The record shows that Plaintiff treated with Kevin T. Denlinger, D.O., from 2001 for a variety of conditions, including bilateral carpal tunnel syndrome. (Tr. at 416-18, 419-22.) In December 2006, Dr. Denlinger reported that Plaintiff was "becoming very depressed" "during her periods." (Tr. at 273.) In February 2007, he reported concern with her use of pain medication, including excessive amounts of Vicodin, Tylenol and Motrin. (Tr. at 270, 271, 279.)  He also reported that Prozac "works wonderful for her depression." (Tr. at 272.) In June 2007, Dr. Denlinger reported conditions of chronic pelvic pain, mood disorder, and migraine headaches. (Tr. at 266). He noted that Plaintiff had not had any manic episodes and "her depression seems to be doing extremely well." (*Id.*) He noted a history of migraine headaches with nausea for which she takes Phenergan and Imitrex. (*Id.*)

In February and March, 2007, Plaintiff reported to emergency care with complaints of migraine and depression, respectively. (Tr. at 280-87.) In August, 2009 Victor Dominguez, M.D.,

attributed Plaintiff's depression as "mostly secondary to the large amount of narcotics amphetamines (sic) that she is taking." (Tr. at 410.) He noted that Plaintiff was agreeable to the recommendation that they start decreasing these drugs. (*Id.*) In October 2009, Dr. Dominguez assessed Plaintiff with degeneration of lumbar or lumbosacral intervertebral discs with Plaintiff to continue with medication. (Tr. at 402.) He referred her to James R. Ellis, M.D., for pain evaluation. (Tr. at 403-04.) Dr. Ellis did not recommend surgery due to the mildly abnormal MRI and the "diffuse nature of her pain." (Tr. at 404.) He diagnosed chronic diffuse pain, probable cervical radiculopathy on the right, status post carpal tunnel release (rule out persistent carpal tunnel), trochanteric bursitis, L4-5 annular bulging with L4-5 and L5-S1 facet arthritis, rule out chronic pain syndrome, and deconditioning. (Tr. at 404.) A November 2009 MRI of the cervical spine revealed moderate disc protrusion at C5-6, minimal disc protrusion at C4-5, and generalized disc dessication at C6-7 with a tiny disc protrusion. (Tr. at 411.) Records show that Plaintiff continued to be treated for depression into 2010, and Cymbalta was not effective. (Tr. at 368-70.) It was discontinued and she was prescribed Symbyax. (Tr. at 369.) The record contains treatment records from Gavin L. Awerbuck, M.D., from November 2009 through 2011 and both his physical and mental medical source statements, discussed below. (Tr. at 433-460.)

A. Neil Johnson, M.D., internal medicine, performed a physical examination of Plaintiff on December 12, 2011, and completed a Medical Source Statement. (Tr. at 374-86.) He diagnosed Plaintiff with severe chronic pain syndrome. (Tr. at 384.) He noted that Plaintiff reported having had right carpal tunnel release surgery three years prior. (Tr. at 380.) Plaintiff underwent a psychological examination on December 9, 2011 with Michael Brady, Ph.D., and Dr. Brady completed a Medical Source Statement. (Tr. at 387-91, 425-27.) Dr. Brady diagnosed Major Depressive Disorder, recurrent, moderate. (Tr. at 390.)

Plaintiff's attorney submitted new medical records to the Appeals Council, shown as Exhibit 18F in the Transcript. The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson*, 402 U.S. at 401). Plaintiff did not request remand for consideration of this new evidence.[6]

The vocational expert ("VE") testified that Plaintiff has past work as a paramedic, performed at the heavy exertional level with an SVP (Specific Vocational Preparation) of 6, and nurse assistant, performed at the medium exertional level and semi-skilled pursuant to the Dictionary of Occupational Titles (DOT). (Tr. at 81, 239.) At the hearing, the ALJ asked the VE to consider an individual of the Plaintiff's age, education and past work experience:

> [W]ho can lift and carry up to 20 pounds occasionally and 10 pounds frequently, could push and pull up to 10 pounds occasionally, stand and walk up to six hours out of an eight-hour workday and sit up to six hours out of an eight-hour workday with normal breaks. (Tr. at 81.)

---

[6]It is worth noting that the court may remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).
     Plaintiff has not requested a remand for consideration of this evidence, yet a review of the exhibit for the sole purpose of determining whether the evidence is new and material shows that it relates to a 2000 hospital visit (prior to the alleged onset date) to address gallstones and resulting in a laparoscopic cholecystectomy.  It is unlikely that this evidence would have resulted in a different decision by the ALJ. (Tr. at 461-71.)

The VE testified that such an individual could not perform Plaintiff's past work. (*Id.*) The VE testified, however, that there were light jobs that such an individual could perform and some skills that would transfer to semi-skilled, light jobs. (Tr. at 81-82.)

The ALJ then asked the VE to consider the same individual as the prior hypothetical with the additional limitations that:

> [T]he exertional limits would be up to 10 pounds occasionally, there would be a sit/stand option at will, there would be no overhead work, there would be no forceful gripping, grasping, pushing or pulling. There will be no exposure to vibration, cold, heat or wetness, the work would be limited to simple, routine, repetitive tasks, the work would involve simple work related decisions with few if any work place changes and there would be occasional interaction with coworkers, supervision and the public. (Tr. at 82.)

The VE testified that such an individual could not perform any of Plaintiff's past work or jobs to which she had transferable skills. (Tr. at 82.) The VE testified that this combination of limitations would result in sedentary work including production worker or assembler, with approximately 2,400 jobs in the region defined as the state of Michigan (sample DOT code: Finisher 731.687-014), inspector with 700 jobs in the region (sample DOT code: Table worker 739.687-182), machine operator or tender with about 1,300 jobs in the region (sample DOT code: Bit tapper 739.685-046). (Tr. at 83.)

Finally, the ALJ asked whether there would be jobs for the individuals in either of the prior hypothetical questions if the person would be "off task 25 percent or more of any given workday and miss three or more days per month due to ongoing physical and/or mental impairments." (Tr. at 83.) The VE testified that there would not be work for such an individual. (Tr. at 83.)

## F.    Analysis

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 8.) Plaintiff argues that the ALJ erred by forming a hypothetical question to

12

the VE that did not accurately portray Plaintiff's impairments and by failing to properly evaluate all the medical records and opinions of evidence. (Doc. 8.) Plaintiff only generally alleges that the Commissioner failed to "properly evaluate all the medical records and opinions of evidence," (Doc. 8 at 6.) As Defendant correctly points out, Plaintiff "does not contest the ALJ's assessment of any medical or opinion evidence." (Doc. 10 at 5.) Specifically, Plaintiff argues that the ALJ's RFC limiting Plaintiff to "simple, routine, and repetitive tasks" does not adequately account for the ALJ's finding that Plaintiff has "moderate difficulties" in maintaining concentration, persistence and pace. (Doc. 8 at 8, tr. at 22-23.) The ALJ's findings regarding Plaintiff's physical impairments and resulting limitations were not challenged by Plaintiff. While the undersigned has reviewed the ALJ's findings and the record evidence in full, and finds that the ALJ's decision is supported by substantial evidence, the physical impairments and limitations will not be addressed in further detail herein.

The ALJ followed the prescribed rules for evaluating Plaintiff's mental impairments. See 20 C.F.R. § 404.1520a. While the majority of treatment records post-date Plaintiff's December 31, 2004 date last insured, "evidence of medical condition(s) after insurance cutoff must be considered to the extent it illuminates claimant's health before that date." *Higgs*, 880 F.2d at 863 (citations omitted.). The ALJ relied all evidence of record including records showing that Plaintiff was treated by Kevin Denlinger, D.O., for carpal tunnel syndrome, GERD and depression during the relevant time period. The ALJ also properly considered Plaintiff's mother's and husband's opinions about her impairments, including depression, and resulting limitations. (Tr. 27, 242-44.) Consistent with these records, Plaintiff testified that her "first acknowledgment" of her depression was in 2001. (Tr. at 65.) One of the few notations by a doctor about Plaintiff's mental health during the relevant period was Dr. Denlinger's note in January 2002 that "[t]his patient has a

13

history of depression, stable on Prozac 20 mg per day. She tolerates this medicine well." (Tr. at 422.) Dr. Denlinger noted no mental deficits or concerns in 2002. For example, in March 2002, Plaintiff was reported to be "[a]lert, oriented to person, place, time and situation. Mood and affect are appropriate. Recent and remote memory intact. Judgment and insight are good." (Tr. at 420.) In January and November 2002 he reported that claimant was "[a]lert and oriented to person, place, time and situation. Mood and affect are appropriate." (Tr. at 419, 422.)

The ALJ also considered the other evidence of record including the medical opinions in making his determination and explained the weight he gave the opinions. (Tr. at 26-27.) The consultative examination report and mental medical source statement of Dr. Brady (December 9, 2011 and January 3, 2012), as well as medical source statements and office treatment records from Dr. Awerbuch (2009-2012) post-date the date last insured by several years. (Tr. at 387-92, 425-27, 433-60.) The ALJ properly considered this evidence to the extent that it shed light on the extent of Plaintiff's impairments during the relevant time period.

The ALJ provided explanations for the weight he assigned to the opinions of Drs. Johnson, Brady and Awerbuch, including where the opinions were not restricted to the relevant time period or were inconsistent with record medical evidence from the relevant time period. (Tr. at 26-27.) For example, Dr. Awerbuch in his January 10, 2012 Medical Source Statement reports that the limitations he set forth therein have existed "since 2005." (Tr. at 26, 460.) The ALJ gave good reasons for his findings with respect to the weight given to the opinions of record and his findings are supported by substantial evidence. 20 C.F.R. § 404.1527.

The ALJ properly measured the severity of Plaintiff's mental disorder in terms of four functional areas, known as the "B" criteria, by determining the degree of limitation in each area. See 20 C.F.R. § 404.1520a(c)(3). The ALJ determined that Plaintiff has mild limitations in

14

activities of daily living, moderate limitations in social functioning and in maintaining concentration, persistence and pace and that there have been no episodes of decompensation. (Tr. at 22-23.) In making these findings, the ALJ considered the medical opinions and other evidence of record, including Plaintiff's testimony and reports.  (Tr. at 22.)

Plaintiff argues that the ALJ's RFC and resulting hypothetical question to the VE limiting Plaintiff to "simple, routine, and repetitive tasks" did not accurately account for Plaintiff's "moderate" limitation in maintaining concentration, persistence and pace. (Doc. 8 at 12.) Plaintiff relies on several cases, including *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp. 2d 698, 702 (E.D. Mich. 2003), for the proposition that a hypothetical question that described the clamant as requiring "'simple work' was insufficient to describe claimant's deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner." *Id.* (citing *McGuire v. Apfel,* 1999 WL 426035 at *15 (D.Or. 1999)).

Plaintiff also relies on cases including *Bankston v. Comm'r of Soc. Sec.*, 127 F. Supp. 2d 820 (E.D.Mich. 2000), for the proposition that Courts find individuals who "often" suffer from deficiencies in concentration are disabled and Plaintiff makes the implicit argument that a "moderate" limitation is equivalent to "often" under the Commissioner's prior regulations . (Doc. 8 at 9-10.) Since *Bankston*, 20 C.F.R. § 404.1520a was amended to encompass a five-level scale based on severity rather than frequency of the limitation, as set forth in the scale evaluated in *Bankston*. *See Brewer v. Comm'r of Social Security*, 2008 WL 719228 at *5 (E.D.Mich. 2008). To the extent *Bankston* applied under the old version of § 404.1520a, it is inapplicable to the current regulation and "an ALJ's failure to include in a hypothetical question a PRTF finding that a claimant 'often' has difficulty concentrating is not a basis for remand when the hypothetical

question adequately describes that claimant's limitations arising from a mental impairment." *Id*. at *5.

Defendant clearly distinguishes Plaintiff's reliance on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), for the premise that an RFC limiting claimant to simple, unskilled and routine jobs does not sufficiently account for moderate deficiencies in concentration, persistence and pace. *Ealy* contained evidence from more than one source that claimant's ability to "sustain attention and concentration for simple repetitive tasks was moderately limited."  *Ealy*, 594 F.3d at 509, 515 n.2. Furthermore, one of the medical opinions found that Ealy could sustain attention in two-hour segments to complete simple repetitive tasks "where speed was not critical." *Id.* at 516. The *Ealy* court pointed out that this description "speaks to some of the restrictions – in pace, speed and concentration" that one of the doctors and the ALJ had found Ealy to possess, yet were omitted from the ALJ's hypothetical question. *Id.* District Courts in this Circuit have declined expand *Ealy* beyond a fact-based analysis. *See e.g., Marini v. Comm'r of Soc. Sec.,* 2014 WL 1230034 *6 (E.D.Mich. 2014); *Tanzil v. Comm'r of Soc. Sec.,* 2013 WL 5423792 *2 (E.D.Mich. 2013); *Jackson v. Comm'r of Soc. Sec.,* 2011 WL 4943966 *4 (N.D.Ohio 2011); *Shaffer v. Colvin*, 2014 WL 1207534 *7 (E.D.Tenn. 2014); *see also Lewicki v. Comm'r of Soc. Sec.,* 2010 WL 3905375 *2 (E.D.Mich. 2010)("Decisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work.").

Unlike the cases relied upon by Plaintiff, there is no evidence of record that Plaintiff would have more than a moderate limitation in concentration, persistence or pace or that Plaintiff's limitations would manifest in the failure to complete tasks in a timely manner or failure to complete them altogether. Nor did the ALJ determine that Plaintiff would "often" suffer a

deficiency in concentration, persistent or pace. Noticeably absent in both Plaintiff's brief and the evidence of record in this case, are such restrictions as set forth in *Ealy*. In fact, record opinion evidence shows that Plaintiff has *no* restrictions with regard to carrying out simple instructions and decisions, but restrictions increase with the complexity of the work, instructions and decisions. The ALJ's limitation to simple, routine and repetitive tasks is directly supported by substantial evidence that these are the types of tasks that Plaintiff can carry out.

On a 2012 Medical Source Statement, state agency examining psychologist Dr. Brady noted that "moderate depression . . . could cause some mild to moderate difficulties with following through with tasks." (Tr. at 425.) In the same opinion, Dr. Brady noted that Plaintiff would have no more than mild restrictions in understanding and remembering complex instructions, carrying out complex instructions and making judgments on complex work-related decisions, but no restrictions in those same tasks as they relate to simple instructions and simple work-related decisions. (Tr. at 425.) Dr. Awerbuch found that since 2005 Plaintiff was only "mildly limited" in understanding, remembering and carrying out "an extensive variety of *technical and/or complex*" or simple job instructions. (Tr. at 460. Emphasis added.) The ALJ's limitation to "simple, routine and repetitive tasks" necessarily precludes complex work. While these opinions post-date the relevant period, the treatment notes from the relevant time period, as well as Plaintiff's daily activities are not inconsistent with these portions of the opinions and also show that Plaintiff was doing well on her medication. There is simply no evidence of record showing that Plaintiff would have had difficulty timely completing simple, routine and repetitive tasks. The RFC limiting Plaintiff to simple, routine and repetitive tasks is consistent with Dr. Brady's finding that Plaintiff has no restrictions as related to understanding, remembering and carrying out simple instructions. (Tr. at 425.)

Although the RFC contains a limitation to "simple, routine, and repetitive tasks", the ALJ went beyond this limitation to include in his RFC all of Plaintiff's mental limitations that were supported by substantial evidence. With respect to Dr. Brady's and Dr. Awerbuch's opinions that Plaintiff is mildy and moderately restricted, respectively, in the ability to deal with the public and interact with supervisors and co-workers, the ALJ's RFC limits Plaintiff to only occasional interaction with the public, supervisors and co-workers. (TR 23, 426, 460). The ALJ included limitations to work requiring only simple, work-related decisions and few, if any, work place changes. (Tr. at 23.) The ALJ's RFC also contains physical limitations that are supported by substantial evidence in the record. The ALJ's RFC accurately portrayed Plaintiff's limitations and was supported by substantial evidence.

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004).

As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports a different conclusion. *McClanahan,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen,* 800 F.2d at 545. The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform a limited range of sedentary work. The medical evidence as a whole did not provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from her impairments, including her mental impairments.

18

The ALJ's RFC was supported by substantial evidence in the record. The ALJ included those limitations in the hypothetical question to the VE. The ALJ properly relied on the VE's testimony in response to the hypothetical question to find that Plaintiff can perform a significant number of jobs in the economy. The ALJ's finding at step five is supported by substantial evidence in the record.

### G.    Conclusion

The ALJ's decision to deny benefits was within the range of discretion allowed by law, it is supported by substantial evidence and there is simply insufficient evidence to find otherwise. Defendant's Motion for Summary Judgment (Doc. 10) should be granted, that of Plaintiff (Doc. 8) denied and the decision of the Commissioner affirmed.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837 (*citing Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall be concise, but

commensurate in detail with the objections, and shall address specifically, and in the same order

raised, each issue contained within the objections.


                                   s/ Charles E Binder
                                   CHARLES E. BINDER
Dated: June 4, 2014                United States Magistrate Judge

### CERTIFICATION

        I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

                                   s/ Kristen R. Krawczyk
                                   Kristen R. Krawczyk
                                   Case Manager Specialist

Dated: June 4, 2014